E-FILED
Wednesday, 21 November, 2012  08:28:08 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| Viehweg, William H. <br>    Plaintiff <br> vs. <br><br> City of Mt. Olive <br> Andrasko, Connie <br> Duggar, Ryan <br> Schulte, Marcie <br> Skertich, John <br>    Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | PLAINTIFF DEMANDS JURY TRIAL <br><br> Civil Action No. 12-cv-3234 <br>    Judge Sue E. Myerscough <br>    Magistrate Judge Byron G. Cudmore |

FILED
NOV 2 0 2012
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

AMENDED COMPLAINT

COMES NOW plaintiff William H. Viehweg and amends his complaint as a matter of course per Federal Rule of Civil Procedure 15(a)(1)(B), and in support of his Amended Complaint against defendants City of Mt. Olive, Connie Andrasko, Ryan Duggar, Marcie Schulte, and John Skertich, states as follows:

1. This action arises under U.S.C.. Title 42, Section 1983, as appears more fully below.

2. Plaintiff William H. Viehweg is an individual, a citizen of the State of Illinois, and recides in the Illinois County of Macoupin.

3. Defendant City of Mt. Olive ("City") is a State of Illinois municipal corporation, and is located in the County of Macoupin.

4. Defendant Connie Andrasko is an individual, is the city clerk of defendant City during the time the following unlawful conduct occurred, is a citizen of the State of Illinois, and recides in the Illinois County of Macoupin.

5. Defendant Ryan Duggar is an individual, is the police chief of defendant City's police department during the time the following unlawful conduct occurred, and is a citizen of the State of Illinois.

6. Defendant Marcie Schulte is an individual, is an alderman in defendant City's council and on the committee that oversees the police department during the time the following unlawful conduct occurred, is a citizen of the State of Illinois, and recides in the Illinois County of Macoupin.

7. Defendant John Skertich is an individual, is the mayor of defendant City during the time the following unlawful conduct occurred, is a citizen of the State of Illinois, and recides in the Illinois County of Macoupin.

8. With the primary and majority of parties reciding and the underlying incident occuring in Macoupin County, Springfield Division is the appropriate venue.

9. That defendant City's official and promulgated city code requires that for the defendant City to take any action against the owner of a privately owned building the defendant City may consider as dangerous and unsafe, the defendant City shall:  have the city building inspector inspect said building as to whether said building is dangerous and unsafe and report said finding to the city council;  have the city council accept and approve the finding of the building inspector and authorize and direct the building inspector to place a notice of said finding upon said building;  authorize the city clerk to serve notice, by and through the police department, upon the owner of said building from which date said owner has a window of fifteen days to make said building safe;  and prohibits defendant City from taking any physical

action against said building until the defendant City receives a court order granting such action.

10. That per above said defendant City's code, only the city council has the authority to speak for the defendant City in declaring the plaintiff's said garage unsafe.

11. That defendant City's above said city code, as written, does not violate the building owner's United States Constitutional right to due process because the final determinations as to whether said building is safe or unsafe, and whether the city's public safety interest outweighs the owner's property interest, is made by a judge in a court of law after the building owner is afforded the opportunity to object and present evidence.

12. That plaintiff Viehweg is the lawful owner of the real property located at 114 West Second South, Mt. Olive, Illinois; that said property has a garage on the southwest corner; that said garage has been in its present physical condition for over two years; and that said garage is not unsafe but may be considered by some to be an eye sore.

13. That as to plaintiff's above said garage and defendant City's above said official code, and during the time the following unlawful conduct occurred, the defendant City's council never took any action to enforce, or attempt to enforce, the code as to plaintiff's garage, as defendant City:  did not have a building inspector inspect said garage;  never received a report from any city building inspector that said garage is dangerous and unsafe;  never approved a finding that said garage is dangerous and unsafe;  never authorized any building inspector to place such a notice upon said garage;  and never authorized the city clerk to serve the plaintiff, by and through the police department, with the above said fifteen day notice.

14. That plaintiff's said garage is located in Ward 2;  that Ward 2's alderman, defendant

Schulte, lives directly across the street from said garage and has a prominent view of said garage; that defendant Schulte already had a personal vendetta against the plaintiff due to a non-incident that occurred several years earlier; that defendant Schulte considers said garage an eyesore, and has long demanded that the defendant City do something about it; and that defendant Schulte is frustrated that defendant City has not been able to find a legal way to fix her personal problem with plaintiff's eyesore of a garage.

15. That during the year of 2011, defendant City's council, including defendant alderman Schulte and defendant mayor Skertich, had repeatedly spoken of the issue of delelict buildings, and at the council meeting of November 7, 2011 specificly mentioned the plaintiff's garage. But that at no time prior to May 15, 2012 did any defendant, or representative thereof, make any attempt to contact plaintiff as to any issue regarding plaintiff's said garage.

16. That defendant City, by and through its aldermen and officials, wanting the plaintiff's garage demolished, knowing that above said code was not really intended for simple stand alone garages, knowing that plaintiff's garage was not really unsafe, and knowing that defendant City's code requiring court approval would incur substantial expense of time and money, made a calculated choice to implement an unlawful policy of extortion to take control of said property of the plaintiff through intimidation and threats while under only the mere color of said code.

17. That the defendant City's council of alderman, by and through defendant alderman Schulte, directed defendant mayor Skertich to administer said policy of extortion; that defendant mayor Skertich directed defendant chief Duggar to carry out and enforce said policy

of extortion; that defendant chief Duggar approved actions by himself and subordinant police officer Louis Mitchlear in carrying out said policy of extortion; that defendant chief Duggar colluded with Defendant Clerk Andrasko to carry out said policy of extortion; and that defendant clerk Andrasko approved actions by herself in carrying out said policy of extortion.

18. That on May 15, 2012, defendant chief Duggar, knowing that he had no lawful authority, did appear at the plaintiff's residence for the purpose of harassing, intimidating, and threatening the plaintiff, did pound on the door, did state to the plaintiff that the issue of the plaintiff's garage had been discussed by defendant mayor Skertich and the Defendant City's council; and did demand to know when the plaintiff was going to demolish the plaintiff's garage; that plaintiff, unsettled by defendant chief Duggar's authoritive and commanding behavior, and for the sole purpose of getting defendant chief Duggar to leave, responded "soon"; and that defendant chief Duggar left without any mention of codes, ordinances, or notices.

19. That on Thursday, August 9, 2012, almost three months later, defendant chief Duggar, knowing that he had no lawful authority, did again appear at the plaintiff's residence for the purpose of harassing, intimidating, and threatening the plaintiff, again pounding on the door, and again demanding to know when the plaintiff was going to demolish the plaintiff's garage; that plaintiff, again unsettled by defendant chief Duggar's authoritive and commanding behavior, responded by inquiring as to what legal authority defendant chief Duggar had as to the matter of the garage; that defendant chief Duggar, noticeably aggitated, stated that the city had an ordinance pertaining to unsafe buildings; that plaintiff stated that he would go to city

hall to verify the ordinance;  that defendant chief Duggar stated that he would have a copy of said ordinance prepared for the plaintiff;  and that defendant chief Duggar left without any mention of notices.

20.  That later in the same day, Thursday, August 9, 2012, plaintiff went to above said city hall to view the defendant City's ordinances as to unsafe buildings;  that when the plaintiff requested of defendant clerk Andrasko to see the ordinances,  defendant clerk Andrasko handed the Plaintiff two papers, one titled Mt. Olive City Code and one titled City of Mt. Olive Letter of Notice, and without comment, walked away;  that a true copy of said paper titled Mt. Olive City Code is attached as Exhibit 1;  and that a true copy of said paper titled Letter of Notice is attached as Exhibit 2.

21.  That above said Letter of Notice was fraudulently created through the collusion of defendants chief Duggar and clerk Andrasko, on August 9, 2012 some time after defendant chief Duggar's above said visit to the plaintiff's residence and was created in reaction to plaintiff's above said challenging of defendant chief Duggar's legal authority;  that both defendant chief Duggar and defendant clerk Andrasko knew that said Letter of Notice was not lawfully authorized by defendant City's council;  that said Letter of Notice was intentionally back dated by defendant chief Duggar and defendant clerk Andrasko to make it falsely appear as though it was created a month earlier;  and that said Letter of Notice was created to harass, intimidate, and threaten the plaintiff into falsely believing that the defendant City had the immediate and lawful right to take his property.

22.  That on the following day, Friday, August 10, 2012, police officer Louis Mitchelar,

under orders of defendant chief Duggar, appeared at the plaintiff's residence; that officer Mitchlear demanded of the plaintiff his intentions as to said garage and stated that defendant chief Duggar intended to speak about the matter of said garage to the city attorney; that plaintiff responded that there was no notice on said garage and that the document defendant clerk Andrasko handed the plaintiff the day before was not a proper notice; that officer Mitchlear never looked at or inspected plaintiff's above said documents (Exhibit 1 and 2) and never looked at or inspected said garage for any posting of any notice as required by defendant City's above official and lawful code; and that defendant chief Duggar's objective, by and through officer Mitchlear, was to see if the policy of extortion was working.

23. That on the following day, Saturday, August 11, 2012, officer Mitchelar again appeared at the plaintiff's residence, again without lawful authority, and pounded on the door frame, stated that he was ordered by defendant chief Duggar to serve upon the plaintiff two documents, handed the plaintiff one document titled Mt. Olive City Code and one document titled City of Mt. Olive Letter of Notice, and left; that the two documents officer Mitchlear handed the Plaintiff are copies of the two documents defendant clerk Andrasko handed the plaintiff two days previous; and that defendant chief Duggar's objective, by and through officer Mitchlear, was to falsely convince plaintiff that everything was being done properly, in order to perfect said policy of extortion.

24. On Sunday, September 2, 2012, just after 9:00 p.m., while plaintiff was home, a defendant City police officer, without lawful authority, for the purpose of harassing, intimidating and threatening the plaintiff, stopped his police vehicle at the foot of plaintiff's driveway for a

prolonged period of time, turned on his vehicle's high beams in the general direction of the plaintiff's garage, shined his vehicle's spot light on the plaintiff's vehicle parked in the driveway, and shined said spot light on and into the plaintiff's dining room window.

25. That on late Tuesday afternoon, September 4, 2012, defendant clerk Andrasko, knowing that the plaintiff had a grievance with defendant City and knowing that there was a council meeting that evening, did place a telephone call to the plaintiff's residence and left the following message on the plaintiff's answering machine: "you can't come in tonight and talk"; that the plaintiff had never attended, and never indicated that he would attend, a defendant City council meeting; and that defendant clerk Andrasko's objective for leaving said telephone message was to preemptively silence the plaintiff by preventing the plaintiff from speaking publicly about the defendant City's policy of extortion and from petitioning the city for redress of his grievance.

26. That in creating and implementing defendant City's unlawful policy of extortion during the time of these unlawful events: defendant aldermen Schulte, her fellow aldermen, and defendant mayor Skertich were policy makers for the defendant City; defendant chief Duggar was a policy maker for the defendant City's police department; and defendant clerk Andrasko was a policy maker for the defendant City's clerk's office.

27. Or, in the alternative, that defendant City so failed to train or supervise its officials and employees that defendant City displayed deliberate indifference to the United States Constitutional rights of plaintiff and others within its jurisdiction to due process, privacy, freedom of speech, and right to petition the defendant City for redress of grievances.

28. That the above said unlawful acts or ommissions by Defendent City, by and through its above said officials and employees, and the above said unlawful acts by defendants alderman Schulte, mayor Skertich, chief Duggar and clerk Andrasko, were done under the color of State law.

29. That defendent City, by and through the unlawful acts or ommissions of its above said officials and employees, and defendants alderman Schulte, mayor Skertich, Chief Duggar, and Clerk Andrasko, by and through their above said unlawful acts, have deprived the plaintiff of his United States Consitutional rights to due process, privacy, freedom of speech, and right to petition the defendant City for redress of grievances.

30. That defendants alderman Schulte, mayor Skertich, chief Duggar and clerk Andrasko played an affirmitive part in the deprivation of plaintiff's constitutional rights by setting into motion a series of acts by others which said defendants knew, or reasonably should have known, would cause others to inflict the constitutional damage, and further, displayed deliberate indifference to the United States Constitutional rights of plaintiff to due process, privacy, freedom of speech, and right to petition the defendant City for redress of grievance.

31. That defendant City officials and defendants clerk Andrasko, chief Duggar, alderman Schulte and mayor Skertich had a duty to report unlawful conduct by any agent of the city, and that instead of reporting above said unlawful actions, said officials and defendants engaged in a coverup.

32. That the defendants' unlawful actions shock the conscience for the following reasons: that as it is essential that members of law enforcement follow rules of law at all times

and not be used as tools to violate laws, it is particularly appalling that the defendants treated the city as their own personal fiefdom, imposing martial like law with suppension of the plaintiff's constitutional rights; that as the city could not have benefited by the defendant's unlawful actions, and as defendants acted in excess of their lawful authority to obtain personal advantage for themselves, their unlawful actions raise questions of official misconduct, a felony under Illinois law.

33. That plaintiff has a justified fear of the defendant City's police department, especially as the plaintiff in this case is acting as a whistleblower; that some five years ago plaintiff was falsely arrested by the defendant City's police for domestic battery when the police knew that there was no such battery or domestic relationship resulting in the plaintiff's wrongful jailing without bond; that defendant City's police created false evidence and withheld evidence of the alleged victim's attempt to obstruct justice; that though the Macoupin County prosecutor proceeded with charges for simple battery, that action was dismissed with prejudice when the trial court judge, after stating that the alleged victim was "lying", granted the plaintiff's pro se motion to dismiss with prejudice for prosecutorial misconduct.

34. That because of the defendants' above said wrongful violation of plaintiff's consitutional rights to due process, wrongful invasion of privacy in such a way as to provoke a false light in the public's eye, freedom of speech, and right to petition the city for redress of grievances, wrongful intrusion into the plaintiff's private activities, and wrongful harassment, intimidation, and threatening of the plaintiff, plaintiff suffered, and continues to suffer, humiliation, shame, anxiety, fear, and mental suffering.

FURTHER, plaintiff William H. Viehweg demands a jury trial.

THEREFORE, plaintiff William H. Viehweg prays for damages against defendant City of Mt. Olive, defendant Connie Andrasko, defendant Ryan Duggar, defendant Marcie Schulte, and defendant John Skertich, collectively and separately, in the amount of $1,200,000.00, and costs, and for any other relief this Court deems proper.

Respectfully Submitted,

William H. Viehweg
Plaintiff
114 W. 2nd South Street
Mt. Olive, Illinois  62069
217-999-5061

## ARTICLE V - BUILDING AS NUISANCE

**25-5-1** **BUILDING CONDITION - NUISANCE.** The Building Inspector or his designated representative shall report to the City Council when any building in the City is in a dangerous condition and constitutes a nuisance. Hereinafter, all references to Building Inspector shall include "his designated representative".

**25-5-2** **TIME LIMIT.** The owner of such building shall repair or alter it so as to make it safe within fifteen (15) days from the time the notice is served upon him in the manner provided by law. (Ord. No. 585; 07-15-02)

**25-5-3** **NOTIFICATION.** The Building Inspector with the approval of the City Council shall place a notice on all "dangerous and unsafe buildings", which notice shall read as follows:

"This building has been found to be a dangerous and unsafe building by the City officials. This notice shall remain on this building until it is repaired, vacated or demolished in accordance with the notice which has been given the owner, occupant, lessee, mortgagee, or agent of this building, or person or persons in whose name or names such building was last assessed, and all other persons having an interest in said building as shown by the land records of the County Recorder of Deeds. It is unlawful to remove this notice until such notice is complied with."

**25-5-4** **DANGEROUS AND UNSAFE BUILDING DEFINED.** All buildings or structures which have any or all of the following defects shall be deemed "dangerous and unsafe buildings".

(A) Those whose interior walls or other vertical structural members list, lean or buckle to such an extent that a plumb line passing through the center of gravity falls outside of the middle third of its base.

(B) Those which, exclusive of the foundation, show **thirty-one percent (31%)** or more of damage or deterioration of the supporting member or members, or fifty percent (50%) of damage or deterioration of the non-supporting enclosing or outside walls or covering.

(C) Those which have improperly distributed loads upon the floors or roofs or in which the same are overloaded, or which have insufficient strength to be reasonably safe for the purpose used.

(D) Those which have been damaged by fire, wind, or other causes so as to have become dangerous to life, safety, morals, or the general health and welfare of the occupants or the people of the City.

# CITY OF MT. OLIVE

## LETTER OF NOTICE

## DANGEROUS AND UNSAFE BUILDING

TO: William Viewheck
114 W. 2nd South
Mt. Olive, IL 62069

You, as owner(s) of the property lawfully described below, are hereby notified by the undersigned **City of Mt. Olive, Illinois** that said property has upon it a building which is:

[X] Dangerous and/or unsafe

[ ] Uncompleted and/or abandoned

The lawful property shall be described as The Garage on the S/W Corner of the Property Has A Roof That is Falling In.

(legal description)

located at 114 W. 2nd South Mt. Olive IL 62069
(address)

Unless such building is put into safe condition or demolished within Fifteen (15) days of the receipt of this notice, the City shall apply to the Circuit Court for an order authorizing such action to be taken by the **City** with respect to the above described building. Any costs incurred by the City to restore the building to a safe condition or to demolish the building shall be recovered from the owner(s) of the above described property pursuant to Chapter 65, Paragraph 5/11-31-1, Illinois Compiled Statutes.

_Chief [signature]_

Dated at Mt. Olive Police Dept., this 9th day of July, 12.

_Connie Andrasko_
CITY CLERK

**(SEAL)**

Exhibit 2

IN THE UNITED STATES DISTRICT COURT FOR THE
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| Viehweg, William H . ) | |
|     Plaintiff ) | |
| vs. ) | Case no. 12-cv-3234 |
| ) | |
| City of Mt. Olive ) | Judge Sue E. Myerscough |
| Andrasko, Connie ) | Magistrate Judge Byron G. Cudmore |
| Duggar, Ryan ) | |
| Schulte, Marcie ) | |
| Skertich, John ) | |
|     Defendants ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of plaintiff's Amended Complaint has been served this 20 day of November, 2012, by depositing same in the United States Mail Box, First Class, postage prepaid and addressed to:

O'Halloran Kosoff Geitner & Cook, LLC
c/o Bhairav Radia and Elisha S. Rosenblum
650 Dundee Road, Suite 475
Northbrook, Illinois 60062

*William H. Viehweg*
William H. Viehweg
Plaintiff
114 W 2nd South
Mt. Olive, IL  62069
217-999-5061