IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| WILLIAM H. VIEHWEG, | ) |
| Plaintiff, | ) |
| v. | ) No. 12-cv-3234 |
| CITY OF MT. OLIVE, et al., | ) |
| Defendants. | ) |

**OPINION**

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Defendants City of Mt. Olive, Illinois (City), Connie Andrasko, Ryan Dugger, Marcie Schulte, and John Skertich's Motion to Dismiss Plaintiff's Amended Complaint (d/e 21) (Motion).[1]  The parties have consented to have this matter decided by this Court. <u>Consent to the Exercise of Jurisdiction by a United States Magistrate Judge and Order of Reference entered May 28, 2013 (d/e 34)</u>. For the reasons set forth below, the Motion is ALLOWED.

---

[1] Viehweg spells Andrasko's name as Andrasko, but the Defendants spell her name Andrasco.  She signed her name as Andrasko on the Notice attached to the Amended Complaint (d/e 16) as Exhibit 2.  Based on the signature, the Court uses the spelling Andrasko.  Viehweg spells Dugger's name as Duggar.  The Defendants use the spelling Dugger.  The Court uses the spelling from the Motion for Dugger's name.

## STATEMENT OF FACTS

For purposes of a motion to dismiss for failure to state a claim, this Court must accept as true all well-pleaded factual allegations contained in the Amended Complaint (d/e 16) (Complaint) and draw all inferences in the light most favorable to Plaintiff William H. Viehweg.  Hager v. City of West Peoria, 84 F.3d 865, 868-69 (7th Cir. 1996); Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d 177, 178 (7th Cir. 1996).  Viehweg alleges that he is a resident of the City.  The individual Defendants are City officials: Andrasko is the City Clerk; Dugger is the City Police Chief; Schulte is an Alderman; and Skertich is the Mayor.

Viehweg owns a residence in the City with a detached garage. Viehweg alleges that the "garage is not unsafe but may be considered by some to be an eye sore." Complaint, ¶ 12.  The City Code sets forth the procedure for taking action against the owner of a dangerous or unsafe structure.  The City building inspector must determine that a building is dangerous and unsafe and report to the City Council.  The City Council must approve the report, direct the inspector to put a notice on the building, and authorize the City Clerk to serve the notice by and through the City Police Department on the owner of the structure.  The notice must state that the owner has fifteen days to make the building safe.  The ordinance

states that the City may not take any physical action against the building until the City receives a court order granting such action.  Complaint, ¶ 9.

Schulte lives directly across the street from Viehweg's garage.  Viehweg alleges that Schulte has a personal vendetta against Viehweg "due to a non-incident that occurred several years earlier."  Complaint, ¶ 14.  Schulte considers Viehweg's garage to be an eyesore and has "long demanded that the defendant City do something about it."  Complaint, ¶ 14.  In 2011, the City Council repeatedly discussed the problem of derelict buildings.  On November 11, 2011, Schulte and Skertich specifically mentioned Viehweg's garage.  However, prior to May 15, 2012, no representative of the City talked to Viehweg about his garage.  Complaint, ¶ 15.

Viehweg alleges the City Council implemented "an unlawful policy of extortion to take control of said property of the plaintiff through intimidation and threats while under only the mere color of said code."  Complaint, ¶ 16.  The City Council allegedly directed Dugger "to carry out and enforce said policy of extortion."  Complaint, ¶ 17.  On May 15, 2012, Dugger came to Viehweg's residence, pounded on the door, stated to Viehweg that Skertich and the City Council discussed the issue of Viehweg's garage, and

demanded to know when Viehweg was going to demolish the garage. Viehweg responded, "soon." Complaint, ¶ 18.

On August 9, 2012, Dugger again appeared at Viehweg's residence. Dugger again pounded on the door and demanded to know when Viehweg was going to demolish the garage. Viehweg was "unsettled" by Dugger's "authoritative and commanding behavior." Complaint, ¶ 19. Viehweg asked for Dugger's legal authority regarding his garage. Dugger became agitated and stated that the City had an ordinance regarding unsafe buildings. Viehweg stated that he would go to City Hall to verify the ordinance. Dugger stated that he would have a copy of the ordinance prepared for Viehweg. Complaint, ¶ 19.

On the same day, August 9, 2012, Viehweg went to City Hall and spoke to Andrasko. Andrasko handed Viehweg two documents. The first was from the City Code entitled, "Article V—Building as Nuisance" (Ordinance). The second was entitled "Letter of Notice Dangerous and Unsafe Building" (Notice). Complaint, Exhibits 1 and 2. The Notice was addressed to Viehweg and stated that his garage was "dangerous and/or unsafe." The Notice stated that unless the garage was put into a safe condition or demolished within fifteen days of receipt of the notice, the City would bring an action in court to secure a court order authorizing the City to

make the garage safe or demolish it.  The Notice stated that Viehweg could be liable for the City's cost to repair or demolish the garage.  Andrasko and Dugger signed the Notice and dated it July 9, 2012.  Complaint, Exhibit 2, Notice.  Viehweg alleges that Andrasko and Dugger fraudulently colluded to back date the Notice to July 9, 2012.  Viehweg alleges that the Notice "was created to harass, intimidate, and threaten the plaintiff into falsely believing that the defendant City had the immediate and lawful right to take his property." Complaint, ¶ 21.

On Friday, August 10, 2012, City Police Officer Louis Mitchlear came to Viehweg's house and demanded to know what Viehweg was going to do about the garage and that Chief Dugger was going to talk to the City Attorney about the garage.[2]  Viehweg stated that there was no notice on the garage and the Notice did not appear to be proper.  Complaint, ¶ 22. On August 12, 2012, Officer Mitchlear came to Viehweg's residence, pounded on the door, and gave him additional copies of the Ordinance and Notice.  Mitchlear stated that Dugger ordered him to serve the documents on Viehweg.  Viehweg alleges that, "defendant chief Dugger's objective, by and through officer Mitchlear, was to falsely convince plaintiff that

---

[2] Viehweg spells Officer Mitchlear's last name as both Mitchelar and Mitchlear.  See e.g., Complaint ¶¶ 22, 23.  The Defendants spell the name as Mitchlear.  See Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss (d/e 22), at 3.  The Court uses the spelling Mitchlear.

everything was being done properly, in order to perfect said policy of extortion." Complaint, ¶ 23.

On September 2, 2012, an unidentified City police officer stopped his police vehicle at Viehweg's residence, shined his headlights in the direction of Viehweg's garage, and shined his spotlight (1) on Viehweg's vehicle parked in the driveway, and (2) in Viehweg's dining room window. Complaint, ¶ 24.

On September 4, 2012, Andrasko telephoned Viehweg's residence and left a message on Viehweg's answering machine which stated, "'You can't come in tonight and talk.'" The City Council was holding a meeting that evening. Viehweg alleges that he "never attended, and never indicated that he would attend, a defendant City Council meeting; and that defendant clerk Andrasko's objective for leaving said telephone message was to preemptively silence the plaintiff by preventing the plaintiff from speaking publicly about the defendant City's policy of extortion and from petitioning the city for redress of his grievance." Complaint, ¶ 25. Viehweg filed this action the same day, September 4, 2012.

Viehweg alleges that Schulte and Skertich were policy makers for the City; Dugger was a policy maker for the City Police Department, and Andrasko was a policy maker for the City's Clerk's Office. Complaint, ¶ 26.

In the alternative, Viehweg alleges that the City failed to train and supervise its officials and, in so doing, displayed deliberate indifference to the "rights of plaintiff and others within its jurisdiction to due process, privacy, freedom of speech, and right to petition the defendant City for redress of grievances."  Complaint, ¶ 27.

Based on these allegations Viehweg alleges claims against the individual Defendants Andrasko, Dugger, Schulte, and Skertich for violation of Viehweg's rights of due process, privacy, freedom of speech, and to petition the government for redress.  Viehweg alleges a municipal liability claim against the City for the same violations.  Complaint, ¶¶ 29-30.  Viehweg further alleges that the Defendants' actions "shock the conscience."  Complaint, ¶ 32.  Viehweg alleges that he has suffered humiliation, shame, anxiety, fear, and mental suffering as a result of the Defendants' conduct.  Complaint, ¶ 34.

The Defendants move to dismiss for failure to state a claim.  In response, Viehweg withdraws his claim for violation of his right to freedom of speech, but otherwise opposes the Motion.  Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint (d/e 25) (Response), ¶ 8.

## ANALYSIS

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper where a complaint fails to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Federal Rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief," and allegations must be "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2) & (d)(1). While a complaint need not contain detailed, specific factual allegations, it must contain sufficient facts to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim must provide the defendant fair notice of what the claim is and the grounds upon which it rests. George v. Smith, 507 F.3d 605, 608 (7th Cir. 2007). Dismissal under Rule 12(b)(6) is appropriate when "the factual detail in a complaint [is] so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." Airborne Beepers & Video, Inc. v. AT & T Mobility, LLC, 499 F.3d 663, 667 (7th Cir. 2007).

The Court finds that Viehweg has failed to allege a plausible claim herein.  Viehweg asserts violations of three of his rights:  his right to privacy; his right to petition the government for redress; and his right to due process.   The Court addresses each claim separately.

A. Privacy

Viehweg alleges that the Defendants invaded his privacy "in such a way as to provoke a false light in the public eye." Complaint, ¶ 34.  This allegation is akin to a state law tort for publication of private facts that puts a person in a false light.  See Lovgren v. Citizens First National Bank of Princeton, 126 Ill.2d 411, 416-19, 534 N.E.2d 987, 988-90 (Ill. 1989). However, alleging a state law tort does not state a claim under § 1983 for violation of a constitutional right.  See e.g., Cameo Convalescent Center, Inc. v. Senn, 738 F.2d 836, 845 (7th Cir. 1984).  Viehweg must allege that the Defendants violated a constitutional right, not state law.  The Constitution does not mention privacy.  The Supreme Court, however, has recognized zones of privacy created by specific constitutional guarantees. These areas include freedom from unreasonable searches and seizures and matters related to marriage, procreation, contraception, family relationships, and child rearing and education.  Lawrence v. Texas, 539 U.S. 574 (2003); Paul v. Davis, 424 U.S. at 713; see also Whalen v. Roe,

429 U.S. 589, 599 (1977). Viehweg does not allege any conduct related to these areas. He therefore fails to allege a violation of any constitutional right to privacy.

    B. <u>Right To Petition The Government For Redress</u>

The First Amendment guarantees the right to petition the government for redress. Viehweg alleges that Dugger and Mitchlear denied him the right to petition the government because he complained to them, but they did not listen or respond. These allegations do not show a denial of a right to petition the government. Viehweg stated his position to both Dugger and Mitchlear. He therefore made his petition. He was not stopped. The right to petition the government is the right to make the petition; the right does not impose on the government any obligation to respond. <u>Hilton v. City of Wheeling</u>, 209 F.3d 1005, 1007 (7th Cir. 2000). These allegations do not show a denial of a right to petition the government for redress.

Viehweg alleges that Andrasko violated his right to petition the government for redress by leaving a message on Viehweg's telephone answering machine that he could not speak at a City Council meeting. Viehweg, however, was able to petition for redress that same day by filing this lawsuit. The Seventh Circuit's opinion in <u>Bridges v. Gilbert</u>, 557 F.3d 541 (7th Cir. 2009), is instructive on this point. In <u>Bridges</u>, the plaintiff was a

prisoner at the Wisconsin Secure Facility. He alleged that the defendants denied him the right to petition the government for redress because the defendants refused to let him file administrative grievances. Id., at 555. The Bridges opinion states that a claim for violation of the right to petition the government for redresses must include allegations of cognizable harm. Id. The plaintiff's ability to file a lawsuit in Bridges provided a remedy through which he could petition the government for redress, so the refusal to let him file administrative grievances did not state a claim, "Because he is currently exercising his right to petition the government for redress of grievances through this lawsuit, he has not been harmed." Id. Similarly, Viehweg was able file this action to petition for redress against the Defendants' efforts to force him to do something about his garage. He therefore suffered no harm from Andrasko's phone message. He fails to state a claim for denial of his right to petition the government for redress.

    C. Due Process

The right to due process encompasses the right to minimum procedural protections before a government may interfere with the person's property or liberty (procedural due process) and the right to be free from certain wrongful governmental action regardless of the process used (substantive due process). See Daniels v. Williams, 474 U.S. 327, 331

(1986); Matthews v. Eldridge, 424 U.S. 319, 332-34 (1976). In the context of this case, the substantive due process right asserted is the substantive right to be free from wrongful governmental conduct that "shocks the conscience." See Rochin v. California, 342 U.S. 165, 209 (1952). Viehweg asserts both procedural and substantive due process claims. The Court addresses the claims separately.

    1. Procedural Due Process

To allege a procedural due process claim, Viehweg must allege that the Defendants interfered with his property or liberty interests without providing him the minimum procedural protections required by the constitution. Doe v. Heck, 327 F.3d 492, 526 (7th Cir. 2003). Viehweg does not allege that any Defendant interfered with his property without providing procedural protections. No Defendant touched his garage or took any action against his garage or any other property. The Notice stated that the City would file a law suit and secure a State court order before touching his garage. Viehweg would, therefore, have the full panoply of procedural protections provided by a formal State court civil judicial proceeding before the City would touch his garage. The City would have to serve a complaint on him; he would be entitled to file an answer; he would be entitled to appear in State court and challenge the validity of the procedures that the

City used to issue the Notice and bring the action. The City would be required to prove in State court that his garage was dangerous and unsafe, and Viehweg would be entitled to defend against that effort. These procedural protections are clearly sufficient. See Matthews, 424 U.S. at 333-34. Viehweg fails to allege any denial of his property without due process.

Viehweg also fails to allege a denial of a liberty interest without due process. To prevail, Viehweg must allege a liberty interest that was affected by the Defendants' actions. It is unclear whether Viehweg alleges a liberty interest that was affected by the Defendants' conduct. Viehweg certainly describes the Defendants' alleged behavior in the language of intentional torts such as invasion of privacy, harassment and intimidation. Complaint, ¶ 34. Committing a state law intentional tort such as invasion of privacy or defamation, however, does not implicate a liberty interest protected by the Due Process. Paul v. Davis, 424 U.S. 693, 701-02 (1976). A liberty interest is affected in this context only when the government official wrongfully stigmatizes a person in the community and denies him a right previously held under state law. Id., at 708; see Siegert v. Gilley, 500 U.S. 226, 233 (1991). The only alleged acts that might have stigmatized Viehweg in the community were the Defendants' comments at the

November 7, 2011 City Council meeting that characterized Viehweg's garage as a derelict building. Viehweg does not allege any other comment to the community about him or his garage. That comment was not accompanied by any denial of a right under state law. He still had his garage. In fact, none of the alleged wrongful conduct denied Viehweg ownership of his garage. He fails to allege a liberty interest that was affected by the Defendants' actions. Thus, he fails to state a claim for violation of procedural due process.

    2. <u>Substantive Due Process</u>

The right to due process also prohibits government officials from engaging in arbitrary and oppressive conduct that shocks the conscience. <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 847-48 (1998). The concept of "shocking the conscience" is a narrow one that is limited to only the most egregious conduct, "It is one thing to say that officials acted badly, even tortuously, but—and this is the essential point—it is quite another to say that their actions rise to the level of a constitutional violation." <u>Tun v. Whitticker</u>, 398 F.3d 899, 903 (7th Cir. 2005). The conduct must be intentional, arbitrary, and intended to harm with no relation to any valid governmental purpose, "Conduct intended to injure in some way

unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Lewis, 523 U.S. at 849.

Viehweg does not allege that the Defendants engaged in any conduct that meets this high standard of culpability. The Defendants wanted Viehweg to demolish his garage. Viehweg alleges that the garage is considered an eyesore by some. The City had a valid governmental interest in the maintenance of all buildings within the municipality. Thus, the actions were in some way related to a valid governmental interest. More importantly, no Defendant attempted to injure Viehweg or his garage. Dugger and Mitchlear pounded on Viehweg's door, Dugger spoke and acted in "an authoritative and commanding" manner, and an unknown officer shined his lights on Viehweg's property. See Complaint, ¶¶ 18-19. No one touched his person or threatened to touch his person. No one touched his garage or threatened to touch his garage. The Notice stated that the City would file a State court lawsuit to secure a court order before it would take any action against his garage. Viehweg would have full opportunity to defend himself in any such suit. These actions do not demonstrate any intent to injure him or his property. They do not rise to the level of shocking the conscience.

Viehweg argues that the Notice was a forgery and so constitutes conduct that shocks the conscience.[3] The only false statement on the Notice was the date. Viehweg does not allege that either Andrasko's signature or Dugger's signature is false. Andrasko and Dugger put the date of July 9, 2012, on the Notice instead of August 9, 2012. The false date is not material because Viehweg had fifteen days from receipt of the Notice, rather than the date of the Notice, to repair or demolish the garage. Viehweg complains that Andrasko and Dugger conspired to issue the Notice without following proper procedures. Failure to follow procedures may render the Notice defective, but not fraudulent. Furthermore, Viehweg could raise the defects in the Notice in any suit brought by the City, and so, would suffer no material harm. Finally, the false date and improper procedures were not intended to injure his person or property. At worst, the Notice threatened a lawsuit in which Viehweg would have the full opportunity to defend the condition of his garage. The false date and the defective procedures do not constitute conduct that shocks the conscience.

---

[3] The Complaint repeatedly alleges extortion. See e.g., Complaint, ¶ 16. Viehweg does not argue this claim of extortion in opposing the Motion. See Memorandum of Law in Support of Plaintiff's Response in Opposition to Defendants' Motion to Dismiss (d/e 26). Viehweg may have based his extortion allegations on the Illinois crime of intimidation. See 720 ILCS 5/12-6(a)(6). As explained above, Viehweg does not allege that any person threatened the harm him personally or to touch his property without a court order. Thus, even if the allegations could constitute intimidation under Illinois law, the actions would not constitute conscience shocking behavior that violates due process.

Viehweg also argues that the Defendants engaged in an illegal cover up of their wrongful conduct because they did not report their illegal conduct to the proper authorities.  Viehweg argues that the individual Defendants committed the felonies of misprision and official misconduct by failing to report the illegal conduct.  As explained above, Viehweg does not allege that any Defendant harmed his person or threatened to harm his person (or anyone else), and no person touched his garage or threatened to touch his garage without a court order.  Thus, even if the Viehweg effectively alleged that the Defendants committed these crimes, he does not allege that they committed conduct that shocked the conscience for purposes of the Due Process clause.   Viehweg fails to state a claim.

Viehweg also brings a § 1983 municipal liability claim against the City.  Viehweg, however, fails to allege that the individual Defendants violated his rights, and therefore, fails to state a claim against the City.  A municipality cannot be liable under § 1983 if its officials and employees did not violate an individuals' constitutional rights.  See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).  Viehweg fails to state a claim against the City.

WHEREFORE Defendants' Motion to Dismiss Plaintiff's Amended Complaint (d/e 21) is ALLOWED.  This case is dismissed with prejudice.  All pending motions are denied as moot.

THIS CASE IS CLOSED.

ENTER:  June 6, 2013

*s/ Byron G. Cudmore*
UNITED STATES MAGISTRATE JUDGE
